# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DANIEL O'NEILL,

     Plaintiff,

v.                                                                    Civ. No. 11-858 JB/GBW

LAWRENCE JARAMILLO,
MANUEL PACHECO,
DWANE SANTISTEVAN,
and MICHAEL GATTI.

     Defendants.

and

DANIEL O'NEILL,

     Plaintiff,

v.                                                                    No. CIV 12-0054 MCA/GBW

GREGG MARCANTEL, Secretary of Corrections,
JAMES LOPEZ, Warden,
LAWRENCE JARAMILLO, former Warden and
Dictator, MANUEL PACHECO, former Warden
and regime Loyalist, DWANE SANTISTAVEN,
former Deputy Warden and loyalist regime,
ARCHI MARTINEZ, officer and regime Loyalist,
EDDY ULTIAGA, officer and regime Loyalist,[1]

---

[1] An amended complaint, *doc. 19*, substitutes Defendant Marcantel, Corrections Secretary, for Defendant Solis and adds Defendants Jaramillo, Pacheco, and Martinez.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Defendants' Motion for Summary Judgment (*doc. 61* filed in CIV No. 11-858) and Defendants' supplemental briefing on the same (*doc. 87* filed in CIV No. 11-858).  Having reviewed the parties' briefing and the applicable law, I recommend that the Court dismiss the case without prejudice for failure to exhaust administrative remedies.

### I.    PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, is a prisoner housed in the Santa Fe North Correctional Facility of the New Mexico Department of Corrections.  He has filed two separate actions in this Court.  The first of these complaints was filed on September 22, 2011.  (No. 11-858, *doc 1*).  Plaintiff subsequently amended his complaint. (*Docs. 16, 34*).  Plaintiff then filed a second complaint on January 18, 2012 (No. 12-54, *doc. 1*), to which the Court permitted two amendments.  (*Docs. 12, 28*).  Based on the similarity of the two actions, the Court filed a notice of intent to consolidate the two cases (in No. 11-858, *doc. 66*; in No. 12-54, *doc. 41)* and on September 13, 2012 the cases were consolidated (in No. 11-858, *doc. 74*, in 12-54, *doc.42*).[2]  Because Defendants had filed their motion for summary judgment in No. 11-858 prior to the order for consolidation (*doc. 61*), the Court ordered them to either provide supplemental briefing incorporating the claims raised by Plaintiff in No. 12-54 into their summary judgment motion or file a *Martinez* report.

_____

[2] Because of the consolidation, all docket references above the number 42 are to No. 11-858.

*Doc. 75* at 2.  On October 29, 2012, Defendants filed their supplemental brief, arguing for summary judgment on all counts in both cases.  *Doc. 87.*   Plaintiff responded to the supplemental briefing on November 6, 2012.  *Doc. 88*.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) mandates dismissal where, upon consideration of all the briefing before the court, no genuine issue as to any material fact exists, and, based on that briefing, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).   The Court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

Summary judgment may be reached on the "pleadings, depositions, answers to interrogatories, and admissions on file" alone.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).  But the opposing party must present more than conjecture and conclusory statements to defeat a summary judgment motion.  *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009).

When evaluating the pleadings of a party proceeding *pro se*, a court must liberally construe them and should hold them to a less stringent standard than would be applied to the pleadings of a represented party. *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991). A court is not required, however, to assume the role of advocate for the *pro se* litigant, nor does the mere fact of appearing *pro se* alleviate the litigant's burden of presenting sufficient evidence to demonstrate a genuine factual dispute that would allow him to survive summary judgment. *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("Pro se litigants are subject to the same rules of procedure that govern other litigants.").

## III.   PLAINTIFF'S CLAIMS

In his complaint filed in Case No. 11-858, Plaintiff alleges that the Defendants named in that action violated his Eighth Amendment rights by interfering with his legal and personal mail in retaliation for exposing Defendants' "acts of corruption." *Doc. 1* at 3; *Doc. 16* at 1-2. In essence, Plaintiff raises three claims: first, that Defendants removed or caused him to be removed from protected custody after he allegedly filed a tort claim against Defendant Lawrence Jaramillo; second, that Defendants caused Plaintiff to suffer a heart attack and failed to give him reasonable treatment for his condition; and finally, that Defendants read his confidential legal mail and prevented him from sending or receiving personal mail, resulting in, among other things, missed visitation opportunities from his family. *Doc. 1* at 4-7; *Doc. 16* at 2-3.

4

In his complaint filed in Case No. 12-54, Plaintiff again alleges that the Defendants named therein removed or caused him to be removed from protected custody, in spite of both an existing medical condition and knowledge that Plaintiff was seen as an enemy of certain prison gangs, in alleged retaliation for Plaintiff's filing a complaint in state court against Defendant Jaramillo. *Doc. 19* at 4-6.  He further states that his civil action filed in state court was dismissed because Defendants failed to provide him with his legal mail. *Id.* at 5.  In addition, he complains that Defendants stole unspecified personal items from him, (*id.* at 4), that Defendant Santistaven breached a contract with him, (*id.* at 6-7), and that he was improperly subjected to a public strip-search by Defendant Martinez, (*id.*).

Reading Plaintiff's No. 11-858 and No. 12-54 complaints together, I identify the following claims:

1. An Eighth Amendment claim in relation to his removal from protected custody;

2. An Eighth Amendment claim in relation to his failure to receive appropriate treatment for his existing medical condition;

3. A constitutional claim in relation to Defendants' interference with his access to the courts via their interference with his legal mail;

4. A First Amendment claim in relation to Defendants' interference with Plaintiff's ability to be visited by his family;

5. A Fourth Amendment claim in relation to Defendant Martinez's strip-search;

6.   A violation of the Fourteenth Amendment Due Process Clause in relation to the theft of his personal property; and

7.   A common law breach of contract claim against Defendant Santistevan.

## IV.   PLAINTIFF HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

The issue before the Court on Defendants' motion for summary judgment is whether Plaintiff exhausted administrative remedies before bringing these two lawsuits.  Pursuant to the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is a necessary prerequisite to a prisoner's 42 U.S.C. § 1983 lawsuit.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Because exhaustion is an affirmative defense, Defendants bear the burden of proving that Plaintiff failed to exhaust administrative remedies.  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

### A.   The PLRA Exhaustion Requirement

A prisoner is required to exhaust all administrative remedies available to him prior to suing over any aspect of prison conditions.  42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 204 (2007).  Exhaustion is required even where the available remedies do not seem to accord with the relief requested, because "exhaustion" refers to the exhaustion of processes, not to any particular form of redress sought by a prisoner.  *See Booth v. Churner*, 532 U.S. 731, 741 at n.6 (2001).  Thus, even where a prisoner seeks monetary damages, he is still required to exhaust all administrative remedies before bringing suit.  *Id.* at 740-41.

6

Substantial compliance with administrative grievance procedures is not sufficient – the grievance process must be concluded before the prisoner can sue under § 1983. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Where, however, a grievance procedure is rendered unavailable by prison officials, a prisoner will not be held to the exhaustion requirement. *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (*citing Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010)).

**B.      Plaintiff's Attempts to Exhaust Administrative Remedies**

In each of his complaints, Plaintiff includes a statement that he has attempted to exhaust administrative remedies. *Doc. 1* at 3 & *Doc.* 16 at 4 (No. 11-858); *Doc.* 19 at 8 (No. 12-54). Each of these complaints is verified and the Court will treat each as an affidavit for the purposes of summary judgment. *Hall*, 935 F.3d at 1111.

The grievance procedure at Santa Fe North Correctional Facility is set forth in New Mexico Department of Corrections Policy CD-150500 and 150501, titled "Inmate Grievances." *Doc. 61*, Ex. A.[3] It requires the prisoner to initiate the grievance procedure by filing an informal complaint. *Id.* CD-150501 § A. If the informal complaint does not resolve the issue, the prisoner must file a formal written grievance. *Id.* Every separate incident must be individually grieved. *Id.* The grievance officer then recommends a disposition of the grievance, which the warden may approve or alter. *Id.* at §§ B-C. If

---

[3] The Court notes that the policies in question have been revised over the time period pertinent to this lawsuit (2008-present) (*see doc.* 61 at 5) However, such revisions have not altered the portions of the grievance procedures relevant to this lawsuit in any way that would affect the outcome of the instant matters.

the prisoner is dissatisfied with the disposition of his grievance, he may then appeal it to the Office of the Secretary of Corrections. *Id.* at § D.  Finally, if a prisoner who has submitted an informal complaint or a formal grievance does not receive a timely response from his submission, then he is entitled to "move on to the next level for review." *Doc. 61*, Ex. A-1 at 7.

In his Complaint in Case No. 11-858, Plaintiff states that he "sent numerous letters to the Warden and Deputy Warden" to "try and solve the cruel and inhuman treatment" to which Plaintiff was subjected, but he received no response. *Doc. 1* at 3. Plaintiff further states that he "presented letters of complaint" about the "illegal mail problem" to "the case manager and unit manager, Deputy Warden and Warden, and to this Honorable Court." *Doc. 16* at 4.  In neither his complaint, nor his response to Defendants' motion for summary judgment, (*doc. 64*), does Plaintiff provide dates or other corroborating evidence as to the existence of these letters.  Moreover, Plaintiff's statement that he "presented letters of complaint" does not describe a process that follows the grievance procedure set forth in CD-150500 and 150501 and summarized above.

In his Amended Complaint in Case No. 12-54, Plaintiff states that he "used the prison grievance procedure available" at the correctional facility and, while he "presented the facts relating to this complaint," he received no response. *Doc. 19* at 8.[4]

---

[4] In his response to the summary judgment motion, Plaintiff provides no more on the issue of exhaustion. He simply states that he "used the prison grievance procedure available to him at this Santa Fe

In neither this Amended Complaint, nor his response to Defendants' motion for

summary judgment, (*doc. 64*), does Plaintiff provide dates or other corroborating

evidence regarding his alleged use of the grievance procedure.  While in the same

Plaintiff's Amended Complaint, Plaintiff claims that he retained copies of his

grievances, he submits none in any of his many filings, including his response to the

summary judgment motion.  *See doc. 19* at 8.  Beyond the conclusory statement that he

"used the prison grievance procedure," Plaintiff does not claim to have exhausted the

grievance process by filing an informal complaint, then a formal grievance and then

appealing to the Secretary of Corrections.  In fact, Plaintiff's statement that he "was not

sent any response saying that my grievance had been received" indicates that he failed

to pursue the process beyond, at most, the informal complaint stage.

### C.   Plaintiff has failed to demonstrate that he has exhausted administrative remedies

Unlike Plaintiff, Defendants present evidence on the exhaustion issue in the form

of affidavits from Ralph Casaus, the Grievance Appeals Coordinator.  *Doc. 61*, Ex. C ¶¶

1, 5, *doc 87* Ex. D ¶¶ 1-5.  Mr. Casaus has access to and has reviewed all inmate

grievance information for the New Mexico Corrections Department.  *Id.*  Those records

reveal that Mr. O'Neill has filed seven grievances over the course of his imprisonment.

*Id.*  Only two of those grievances (Nos. 05-08-13 and 05-11-47) were appealed and

---

Correctional facility to try and solve the criminal acts personally targeted at the Plaintiff, as a form of
retaliating against Plaintiff for filing a civil complaint on this facility.  Plaintiff presented facts relating to
this Complaint."  *Doc. 88* at 2.

therefore properly exhausted. *Doc. 61*, Ex. C ¶ 6.  Neither of these two appealed

grievances pertain to any of Plaintiff's claims in either complaint filed in this matter.[5]

*Doc. 61*, Ex.  ¶ 7C.  Even if either one of these grievances had addressed an incident

described in either of Plaintiff's Complaints, the Court would be unable to consider the

underlying conduct.  The Secretary of Corrections denied the appeal of No. 05-08-13 on

September 28, 2005 and of No. 05-11-47 on January 30, 2006.  *Id.*  Each therefore falls

outside the three year statute of limitations imposed on § 1983 claims before this Court

and would be barred on this basis.  *See Lymon v. Aramark Corp.*, 728 F. Supp. 2d. 1207,

1218 (D.N.M. 2010).  As to Plaintiff's other five grievances, there is no indication they

were ever appealed and therefore no evidence that they were properly exhausted.

In the face of this evidence establishing the failure of exhaustion, Plaintiff

provides only conclusory and self-serving statements.  Such, even in the form of an

affidavit, are insufficient to avoid summary judgment.  *Hall*, 935 F.3d at 1111; *see also*

*Thomas v. U.S. Bureau of Prisons*, 282 F. App'x. 701, 704 (10th Cir. 2008)(holding that a

prisoner failed to properly exhaust administrative remedies where his only excuse for

failing to timely comply with the prison grievance procedure was his own conclusory

affidavit).  Plaintiff provides no grievance documents to support his claim that he "used

the grievance procedure" for the instant claims.  He provides no dates, even

---

[5] 05-08-13 is grievance filed against a "Captain Brodie" for allegedly yelling at Plaintiff, damaging
Plaintiff's personal property, and requiring Plaintiff to move from a lower bunk on July 12, 2005.  *Doc. 61*,
Ex. C.  05-11-47 is a grievance about failure to protect Plaintiff from another inmate named "Tony" and
alleges that a "Captain Pennington" made an attempt on his life on November 15, 2005. *Id.*

approximate ones, for any grievance filings. He never even contends to have appealed a

single grievance denial related to his instant claims to the Secretary of Corrections.

Moreover, Plaintiff has presented no evidence of behavior by the prison officials that

would render the grievance procedure unavailable, such as fear of physical retaliation

for filing a grievance. *See Tuckel*, 660 F.3d at 1252-53. In fact, based upon his prior

grievance filings, Plaintiff appears ready and able to utilize the procedure for even

minor matters. *See supra* at 10, n. 5.

Defendants have demonstrated the absence of a genuine issue of material fact

regarding Plaintiff's failure to exhaust his administrative remedies. Plaintiff has failed

to designate specific facts showing a genuine factual issue regarding exhaustion. I   I

therefore conclude that this Court should find in favor of the Defendants and dismiss

all claims based on his prison conditions without prejudice. *Gallagher v. Shelton*, 587

F.3d 1063, 1068 (10th Cir. 2009) (dismissals for failure to exhaust generally are without

prejudice).

## V.   PLAINTIFF'S COMMON LAW CLAIM FOR BREACH OF CONTRACT

Plaintiff's Complaints include one claim which is potentially not related to his

prison conditions and thus not bound by the PLRA's exhaustion requirement. This

claim is the potential common law breach of contract claim against Defendant

Santistevan. Assuming Plaintiff raises such a claim, it is not based on federal law nor

does the record reflect any basis for diversity jurisdiction. Consequently, any

jurisdiction over this claim would be an exercise of the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Upon dismissal of Plaintiff's claims based on his federal constitutional rights, this Court must decide whether or not it will adjudicate this state contract claim. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). Given that the dismissal of the federal claims would be early in the litigation process, I recommend that this Court exercise its discretion to decline jurisdiction over Plaintiff's breach of contract claim and dismiss it without prejudice. Such an action will still give Plaintiff at least thirty days to file his claim in state court. *See* 28 U.S.C.A. § 1367(d).

## VI.  CONCLUSION

There is no genuine issue of fact regarding Plaintiff's failure to exhaust his administrative remedies as required by the PLRA, 42 U.S.C. 1997e(a). For that reason, I recommend that Defendants' motion for summary judgment, (*doc. 61*), be GRANTED as to Plaintiff's § 1983 claims and those claims be DISMISSED without prejudice. Further, I recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining common law claim and that claim be DISMISSED without prejudice.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**